IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00033-CR

 

Kevin Joseph Reese,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 19th District Court

McLennan County, Texas

Trial Court No. 2005-1049-C1

 



MEMORANDUM  Opinion










 

            Kevin Joseph Reese was convicted of possession of a
controlled substance, which was enhanced to a second degree felony.  See
Tex. Health & Safety Code Ann.
§ 481.115(b) (Vernon 2003); Tex. Penal
Code Ann. § 12.42(a)(2) (Vernon Supp. 2008).  He was sentenced to 20
years in prison.  Because the issue of vindictive prosecution was not preserved
and because Reese’s right to a speedy trial was not violated, the trial court’s
judgment is affirmed.




Vindictive Prosecution

            In his first issue, Reese contends
that the prosecutor assigned to his case engaged in vindictive prosecution.  

            Both Texas and federal courts
recognize that prosecutors have broad discretion in deciding which cases to
prosecute.  Neal v. State, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). 
A claim of prosecutorial vindictiveness may be established by either of two
distinct methods of proof:  1) proof of circumstances that pose a
"realistic likelihood" of such misconduct sufficient to raise a
"presumption of prosecutorial vindictiveness,” which the State must rebut
or face dismissal of the charges; or 2) proof of "actual
vindictiveness"- that is, direct evidence that the prosecutor's charging
decision is an unjustifiable penalty resulting solely from the defendant's
exercise of a protected legal right.  Id. (internal citations omitted). 
Reese bases his claim on the second method of proof, actual vindictiveness.

            To establish a claim of actual
vindictiveness, a defendant must prove, with objective evidence, that the
prosecutor's charging decision was a "direct and unjustifiable
penalty" that resulted "solely from the defendant's exercise of a
protected legal right."  Neal v. State, 150 S.W.3d at 174.
(internal citations omitted).  Under this method of proof, the defendant
shoulders the burden of both production and persuasion, unaided by any legal
presumption.  Id.  The trial judge decides the ultimate factual issue
based upon the evidence and credibility determinations.  Id. at
174-175.  The State may stand mute unless and until the defendant carries his
burden of proof.  Id.  We note that the charging decision in this
proceeding was made prior to the conduct Reese alleges is proof of
prosecutorial vindictiveness.

            But, just as in Neal, Reese has
not preserved his claim for review.  See Neal v. State, 150
S.W.3d at 175.  Although Reese points to two hearings[1] where he informed the trial court that he
wanted the prosecutor removed from the case and to a pro se motion for speedy
trial where he mentioned that the prosecutor was vindictive in his prosecution
of an earlier case, Reese did not let the trial court know with sufficient
specificity that his complaint was that the prosecutor’s charging decision in
this case was a direct and unjustifiable penalty that resulted solely from
Reese’s exercise of a protected legal right.  See Tex. R. App. P. 33.1(a)(1)(A).  The
trial court was not asked to decide whether Reese met his burden of proof and
if so, did not then put the State on notice that it had to justify its
actions.  Reese has not preserved this issue for review, and it is overruled.

Speedy Trial

            In his second issue, Reese contends
that his conviction should be reversed and a judgment rendered of acquittal
because he was denied his constitutional right to a speedy trial.  

            The Sixth Amendment to the United
States Constitution guarantees an accused the right to a speedy trial.  Cantu
v. State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing Zamorano v.
State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)).  Supreme Court precedent
requires state courts to analyze federal constitutional speedy-trial claims
"on an ad hoc basis" by weighing and then balancing the four Barker
v. Wingo[2]
factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the
right, and 4) prejudice to the accused.  Id.  While the State has the
burden of justifying the length of delay, the defendant has the burden of
proving the assertion of the right and showing prejudice.  Id.  The four
factors are related and must be considered together along with any other
relevant circumstances.  Id. at 281.  Courts must apply the Barker
balancing test with common sense and sensitivity to ensure that charges are
dismissed only when the evidence shows that a defendant's actual and asserted
interest in a speedy trial has been infringed.  Id.

Standard of Review

            "In reviewing the trial court's
ruling on appellant's federal constitutional speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual
components, and a de novo standard for the legal components."  Zamorano
v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).  Under the abuse of
discretion standard, appellate courts defer not only to a trial judge's
resolution of disputed facts, but also to his right to draw reasonable
inferences from those facts.  Cantu v. State, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008).  The trial judge may completely disregard a witness's testimony,
based on credibility and demeanor evaluations, even if that testimony is
uncontroverted.  Id.  And all of the evidence must be viewed in the light
most favorable to his ultimate ruling.  Id.

            As a general rule, an appellate court
reviewing a trial court's ruling on a motion to dismiss for want of a speedy
trial must do so in light of the arguments, information, and evidence that was
available to the trial court at the time it ruled.  Dragoo v. State, 96
S.W.3d 308, 313 (Tex. Crim. App. 2003).  

The Hearing

            On January 17, 2008, the trial court brought Reese into court because on the day before, Reese had filed two
pro-se motions, a writ of habeas corpus alleging a speedy trial complaint and a
“Motion to Set Aside Indictment for Failure to Provide Speedy Trial.”  Reese
had also “filed some pro se letters to the court alleging that [his] right to a
speedy trial has been violated….”  A hearing took place on those motions.  The
case had been transferred to this particular court only three days before the
hearing.  Further, neither party asked the court to take judicial notice of
what was in the court’s file, nor admitted into evidence what had occurred in
the district court where the indictment was originally filed.  Throughout the
hearing, the trial court assured Reese he would get a speedy trial and set the
trial for the next week.  After the hearing, Reese’s motions were denied.

            Length of the Delay

            The length of the delay is measured
from the time the defendant is arrested or formally accused.  Dragoo v.
State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).  This factor is, to some
extent, a triggering mechanism, so that a speedy trial claim will not even be
heard until passage of a period of time that is, on its face, unreasonable under
the circumstances.  Id. (citing Doggett v. United States, 505 U.S. 647, 651-652, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992); Barker v. Wingo, 407 U.S. at
530).  In general, courts deem a delay approaching one year to be unreasonable
enough to trigger the Barker inquiry.  Dragoo v. State, 96 S.W.3d
at 313.

            Prior to any discussion about the
motions filed by Reese, the trial court confirmed that Reese had been
represented for about two years by the same counsel and prior to that he had
been represented by different counsel.  Reese stated that the case had been
pending almost three years.  It appears from the record that the parties were
in agreement that the case had been pending a long time.

            A delay of almost three years is long
enough to trigger the Barker inquiry and weighs against the State.

            Reason for the Delay

            When a court assesses the second Barker
factor, "different weights should be assigned to different reasons" for
the delay.  Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). 
A valid reason for the delay should not be weighed against the government at
all.  State v. Munoz, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing
Barker v. Wingo, 407 U.S. at 531 (valid reason for the delay
"should serve to justify appropriate delay")).  And delay which is
attributable in whole or in part to the defendant may even constitute a waiver
of a speedy trial claim.  Id. (citing Dickey v. Florida, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26, 38 (1970) (Brennan, J., concurring) (defendant may be
"disentitled to the speedy-trial safeguard in the case of a delay for
which he has, or shares, responsibility")).

            In response to Reese’s statement to
the court that the case had been pending almost three years, the State
explained that part of the delay was Reese’s trial for felony bail jumping. 
Another part of the delay was that they had to go to Illinois to retrieve
Reese.  The State further explained that Reese had asked for resets or
continuances so his attorney could obtain additional information.  Reese’s
counsel agreed that he filed some continuances on Reese’s behalf earlier in the
proceeding.  He also stated that since August, there had been other cases
pending in the previous district court that had been specially set, such as
three murder trials and aggravated sexual assault trials, which caused this case
not to be tried.  The trial court commented that it understood how that could
happen.  

            Based on the statements made in court,
the trial court could have determined that Reese shared in the responsibility
for the delay of his trial.  Thus, this factor weighs in favor of the State.

            Assertion of the Right

            A defendant has the responsibility to
assert his right to a speedy trial.  Cantu v. State, 253 S.W.3d 273, 283
(Tex. Crim. App. 2008).  The lack of a timely demand for a speedy trial
strongly indicates that a defendant did not really want a speedy trial and that
he was not prejudiced by lack of one.  Dragoo v. State, 96 S.W.3d 308,
314 (Tex. Crim. App. 2003).  Inaction weighs more heavily against a violation
the longer the delay becomes.  Id. (citing G. Dix & R. Dawson, Texas
Criminal Practice and Procedure § 23.40 (2d ed. 2001)).  Filing for a dismissal
instead of a speedy trial will generally weaken a speedy-trial claim because it
shows a desire to have no trial instead of a speedy one.  Cantu v. State,
253 S.W.3d 273, 283 (Tex. Crim. App. 2008).

            Only a day before the hearing, Reese
filed two pro-se motions, a writ of habeas corpus alleging a speedy trial
complaint and a “Motion to Set Aside Indictment for Failure to Provide Speedy
Trial.”  The trial court stated that Reese had also “filed some pro se letters
to the court alleging that your right to a speedy trial has been violated…,” 
but no time frame was given for those letters and it is unclear as to what
“letters” the trial court was referring.  If any earlier requests for a speedy
trial were made, Reese did not bring those requests to the trial court’s
attention.  On appeal, Reese points to veiled references to the amount of time
he had spent in jail to the court in which this proceeding was originally
filed.  These references were not before the trial court that decided the pro
se motions and do not affirmatively assert Reese’s right to a speedy trial.

            Further, when Reese was told a trial
would be set for the next week, which was January 22, 2008, counsel explained that because he was currently trying a murder case, Reese wanted to start
his trial on the 28th or 29th so that counsel could look into some things. 
“[H]e wants a speedy trial but wants to give me that week after this trial to
properly prepare.”  RR V at pg. 6.  

            Reese delayed in asserting his right
to a speedy trial.  He then asked for a dismissal rather than a speedy trial. 
Further, when a trial was set, Reese wanted to wait another week.  The trial
court could have believed that Reese did not really want a speedy trial.  This
factor weighs against Reese.

 

            Prejudice to the Accused

            When a court assesses the final Barker
factor, it must do so in light of the interests of defendants which the speedy
trial right was designed to protect: (1) to prevent oppressive pretrial
incarceration; (2) to minimize the accused's anxiety and concern; and (3) to
limit the possibility that the accused's defense will be impaired.  Barker
v. Wingo, 407 U.S. at 532; Dragoo v. State, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003).

            As is obvious by the fact that Reese
was brought back to Texas from Illinois, he was not detained in Texas the
entire period between indictment and trial.  Nevertheless, Reese complained
that by being in jail so long, he was broke and had lost everything.  Reese
further complained that he had two witnesses who had passed away.  He claimed
that the witnesses were with him the night the offense for possession of a
controlled substance took place.  He contended that he was not going to get a
fair trial because of the delay.  The prosecutor for the State responded that
this was the first time he had heard about additional witnesses for the
possession case.  The prosecutor stated that Reese had alleged the same thing,
that someone had passed away, in the felony bail jumping case; but in the drug
case, the prosecutor did not believe any one else, other than the State’s
witnesses, was present at the time of the offense.  Further, Reese did not
identify with specificity who had died or how their testimony would have
assisted in his defense.

            The trial court could have disbelieved
Reese’s assertion that he had witnesses who could not now testify.  But because
Reese had been in jail so long, this factor only weighs slightly in favor of
Reese.

Balancing

            In balancing the four factors, we find
that although the delay was lengthy and Reese had been in jail for an extensive
period of time, Reese contributed to the delay, he did not really want a speedy
trial, and the prejudice to him was slight.  Therefore, when balanced together, the weight of the four factors is against a finding of a violation of Reese’s
right to a speedy trial.  

            The trial court did not err in denying
Reese’s motions, and Reese’s second issue is overruled.

Court Costs

            In his third issue, Reese asserts that
by an order signed on January 31, 2008, the trial court violated his due process rights by notifying the Texas Department of Criminal Justice—Institutional
Division to debit Reese’s inmate account for court costs without giving him prior
notice.  Reese does not challenge the amount of the cost assessed against him,
only the method by which TDCJ—ID was notified to debit his inmate account for
the cost assessed.  

            Reese’s entire argument is based
solely on this Court’s opinion in In re Keeling, where a majority of
this Court held that, in a criminal mandamus proceeding, a court’s order
notifying TDCJ—ID to debit an inmate’s trust account for cost violated the
inmate’s right to due process and was void.  See In re Keeling,
227 S.W.3d 391 (Tex. App.—Waco 2007, orig. proceeding).  However, recently, the
Court of Criminal Appeals has held that the particular complaint made by Reese
and made by the inmate in Keeling is not a criminal law matter.  In
re Johnson, ___S.W.3d ___, No. AP-75,898, 2008 Tex. Crim. App. LEXIS 1628
(Tex. Crim. App. Oct. 29, 2008).  Therefore, because Reese’s complaint is not a
criminal law matter, this issue is not properly before us; and we will not
dispose of the issue in this criminal appeal.  We dismiss this issue.

Conclusion

            Having disposed of all issues properly
before us, we affirm the trial court’s judgment of conviction.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Affirmed

Opinion
delivered and filed February 11, 2009

Do
not publish 

[CR25]









[1]
Reese wanted the Court to consider two more hearings from different
proceedings.  Because we denied his motions to supplement the record with
reporter’s records from those hearings, those hearings are not a part of this
record for review.  Even if the record was supplemented with those hearings,
his claim would still not be preserved.





[2] 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).








. granted); see also Harris,
790 S.W.2d at 587; Biggs, 921 S.W.2d at 286. 
      Several of the other factors articulated in Harris also suggest a finding that the error in the
instant case was harmless. Harris, 790 S.W.2d at 587. The nature and source of the error was
a failure by the State to assure that the record indicated proper notice was given to the defendant,
and the collateral implications of this error were minimal as Gabriel’s attorney did not appear to
be actually surprised by the outcry statements. See Biggs, 921 S.W.2d at 286. Moreover, it is
not likely the error which occurred in this instance will be repeated in future cases if declared
harmless by the Court because all the State must do to correct this deficiency is file the notice
required under article 38.072 with the trial court clerk. If in future cases the State fails to properly
notify defendants of its intent to offer outcry testimony, then those defendants will be able to
object to the outcry testimony claiming that the State surprised them with the evidence. Id. at 287. 
Thus, the Harris factors weighing in favor of declaring the error harmless outweigh any emphasis
the State placed on this evidence in its opening and closing statements.
      Consequently, we find the error harmless, overrule Gabriel’s complaint, and affirm the trial
court’s judgment.

                                                                               BOBBY L. CUMMINGS
                                                                               Justice


Before Chief Justice Davis,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed June 10, 1998
Publish